**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Paul Hobbs, | No. CV-20-00787-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Michael Santiago, et al., | |
| Defendants. | |

This Court's prior order granted Plaintiff Richard Paul Hobbs's ("Plaintiff") motion to proceed in forma pauperis but struck his complaint because it was so illegible that the Court could not perform its required screening function. (Doc. 7 at 1–2). Plaintiff's amended complaint is now pending (Doc. 11) and the Court will screen it.

## I.  STATUTORY SCREENING

Under 28 U.S.C. § 1915(e)(2), a Court must dismiss a case brought by a litigant proceeding in forma pauperis upon finding that (1) his "allegation of poverty is untrue," (2) his "action or appeal" is "frivolous or malicious," (3) his complaint "fails to state a claim on which relief may be granted," or (4) "seeks monetary relief against a defendant who is immune from such relief." Section 1915 ensures "indigent litigants have meaningful access to the federal courts" while recognizing "that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watson v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). A court must dismiss for failure to state a claim when the claim lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a claim to relief must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies the plausibility standard when it contains factual content that allows a court to draw reasonable inferences as to the defendant's liability. *Twombly*, 550 U.S. at 556. Detailed factual allegations, however, are not necessary—a complaint need only be "short and plain." *Id.* at 555. Indeed, a court may dismiss a complaint if it is "argumentative, prolix, replete with redundancy, [or] largely irrelevant." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996). A court must accept well-plead facts as true and draw all reasonable inferences in a plaintiff's favor when reviewing a complaint for failure to state a claim. *Iqbal*, 556 U.S. at 678–79.

Although there is significant "overlap" between "the failure-to-state-a-claim . . . and the frivolousness standard[s]" they "were devised to serve distinctive goals." *Neitzke*, 490 U.S. at 326. "Frivolous" allegations "lack[] an arguable basis in law or in fact." *Id.* at 325. The term includes "inarguable legal conclusion[s], . . . fanciful factual allegation[s,]" and "fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id.* at 325, 328. When screening out frivolous claims a court must actually "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* at 327. In fact, this Court lacks jurisdiction over claims that are "'patently without merit, or so insubstantial, improbable, or foreclosed by Supreme Court precedent as not to involve a federal controversy.'" *City of Las Vegas v. Clark Cty.*, 755 F.2d 697, 701 (9th Cir. 1984) (quoting *Demarest v. United States*, 718 F.2d 964, 966 (9th Cir. 1983)).

### A. Religious Discrimination

Plaintiff claims that he is entitled to money damages because the Mayo Clinic Hospital ("Mayo Clinic") and Dr. Michael J. Santiago ("Santiago"; collectively, "Defendants") discriminated against him based on his religion. (Doc. 11 at 1, 2, 7, 8). Specifically, he claims that the Defendants prevented him from complying with the dietary doctrines of his religion.

Because he seeks money damages, Plaintiff's only route for relief is 42 U.S.C. § 1983 which "provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting 'under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory.'" *Gomez v. Toledo*, 446 U.S. 635, 638 (1980) (citation omitted); *Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133, 1144 (N.D. Cal. 2014) (explaining that, in a suit under 42 U.S.C.§ 2000a, "a plaintiff cannot recover damages and may only seek injunctive relief"). But Plaintiff's complaint falters at the first step of making any such claim: that defendants acted under color of state law. *Fonseca v. Kaiser Permanente Med. Ctr. Roseville*, 222 F. Supp. 3d 850, 860 (E.D. Cal. 2016).

Courts have assiduously "insisted that the conduct allegedly causing the deprivation of a federal right be *fairly attributable* to the State" before it can come within § 1983's scope. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982) (emphasis added). To determine whether the conduct in question is fairly attributable to the State, courts engage in a two-part inquiry:

> First, the deprivation must be caused by some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-

state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) (internal quotations omitted) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

In analyzing a private actor's conduct under § 1983, courts "start with the presumption that [such] conduct . . . is not state action," *Florer v. Congregation Pidyon Shevuyim*, 639 F.3d 916, 922 (9th Cir. 2011), unless a plaintiff can show "'something more' which would convert the private party into a state actor," *Lugar*, 457 U.S. at 939. Although courts have eschewed any specific formula for locating this "something more," courts most commonly cite four tests: "(1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835–36 (9th Cir. 1999). A plaintiff invoking § 1983 cannot rely on "[c]onclusionary allegations, unsupported by facts," or "bald legal conclusion[s]" of state action. *Price v. State of Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991) (alteration in original) (quoting *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984)); *Johnson v. Univ. of San Diego*, No. 10CV0504-LAB (NLS), 2011 WL 4345842, at *4–5 (dismissing, with prejudice, claims against private university officials for want of facts showing their conduct was fairly attributable to the state).

Plaintiff's complaint fails to allege any facts under either prong of the two-part inquiry, failing to even offer conclusory allegations. First, he does not allege that Defendants restricted his food based on any state law or policy or direction from a state agent. *See Fonseca*, 222 F. Supp. 3d at 861–62 (finding this prong met where private doctor took actions required by California state law). In fact, except for a claim discussed in more detail below, the complaint is utterly devoid of any reference to a governmental actor or state directive. Without any facts showing that a state policy or direction caused the alleged deprivation, Plaintiff cannot state a claim to relief. Second, even if the Court indulges Plaintiff in the assumption that Defendants prevented him from following his religion's dietary proscriptions because of some state law, policy, or other direction, he still fails to

allege any facts to support a finding that Defendants were state actors under any of the various formulations of that test.

Moreover, the facts of his case—a private person treated by a private doctor at a private hospital—are far afield from the circumstances in which courts have been willing to consider private hospitals and doctors state actors. *Sawyer v. Legacy Emanuel Hosp. & Health Ctr.*, No. 3:18-cv-02128-SB, 2019 WL 1982530, at \*3 (D. Or. May 3, 2019) (collecting cases). The courts have recognized that such entities do not become state actors simply by taking state funding or because they are subject to regulation. *Fonseca*, 222 F. Supp. 3d at 862. And rather than any state-imposed directive, their decisions typically turn on medical judgments "informed by expertise, training, and the specifics of the patient presented to them." *Id.* The lone exceptions to the continued reluctance to view private hospitals and doctors as state actors appears to be where a state has contracted or delegated obligations—like caring for inmates and indigent citizens or in running a publicly-financed hospital—to a private entity. *Sawyer*, 2019 WL 1982530, at \*3 (collecting cases). In fact, as was true in *Fonseca* four years ago, research reveals no "case where a private doctor working at a private hospital providing treatment to a private person was found to have acted under color of [state] law." 222 F. Supp. 3d at 865.

Accordingly, the Court will dismiss Plaintiff's religious discrimination claims with prejudice.

## B. Americans with Disabilities Act

Plaintiff also invokes the Americans with Disabilities Act ("ADA") and claims that Defendants violated it by (1) discharging (or planning to discharge) him without replacing his "Unna boot" and (2) failing to provide him with reasonable accommodations because his hospital room was too hard to navigate without help. (*See, e.g.*, Doc. 11 at 1, 2, 5).

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

"Discrimination" includes "a failure to make reasonable modifications . . . necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(2)(A)(ii). A hospital is a place of public accommodation. 42 U.S.C. § 12181(7)(F). "[M]edical care is 'one of the 'services, programs, or activities' covered by the ADA.'" *Payne v. Arizona*, No. CV 09-01195-PHX-NVW, 2012 WL 1151957, at *3 (D. Ariz. Apr. 5, 2012) (internal quotations omitted) (quoting *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 284 (1st Cir. 2006)).

Although the Court is concerned that Plaintiff's foot injury is not a disability within the ADA's admittedly broad "functional" definition of that term, the Court need not reach that issue because Plaintiff does not raise a cognizable claim under the ADA for a different reason. "While evidence of discriminatory medical care can constitute a claim under the ADA, claims based solely on the provision of inadequate or negligent medical care are not cognizable under the ADA." *Id.* at *4. Given that "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability," *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1022 (9th Cir. 2010), a plaintiff's disagreement with treatment decisions "sound in medical malpractice rather than discrimination," *Grant v. Alperovich*, 993 F. Supp. 2d 1356, 1364–65 (W.D. Wash. 2014) (collecting cases). Therefore, to the extent that Plaintiff disagrees with how Defendants treated him, he is not arguing that they denied him medical treatment based on a disability. Rather, his quarrel is with the adequacy of the treatment that Defendants provided to him—that the better course would have been to replace his Unna boot and to give him a room he could navigate more easily.

Therefore, these claims are not ADA claims. If they are anything at all, they are medical malpractice claims and the Court will assess them accordingly.

### C. Medical Malpractice

As stated, Plaintiff's allegations relating to the purported inadequacy of Defendants' treatment are cognizable (if at all) as a medical malpractice claim. Plaintiff's allegations,

however, not only fail to state a claim for relief but are also frivolous.

Arizona statutes define and regulate medical malpractice claims. To state a claim for medical malpractice liability, a plaintiff must allege:

> 1. The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances[; and]
>
> 2. Such failure was a proximate cause of the injury.

A.R.S. § 12-563. "Unless malpractice is grossly apparent, the standard of care must be established by expert medical testimony." *Rasor v. Nw. Hosp., LLC*, 403 P.3d 572, 575 ¶ 12 (Ariz. 2017).

While Plaintiff does make some vague allegations indicating his belief that Defendants treatment of his injuries was imperfect, his complaint ultimately fails to state a claim for medical malpractice because he fails to give any detail about the appropriate standard of care within the meaning of § 12-563 and how Defendants failed to follow it. Rather, the entire point of his complaint is that the "experts" are not experts at all, and the conventional standards of modern medicine are themselves inadequate.

For example, Plaintiff explains he educated himself on "cures that require no prescription" that ultimately proved more effective than any technique "that medical doctors would have used." (Doc. 11 at 3). In his view, modern medicine "isn't based on science" but is instead a form of religious doctrine. (*Id.* at 5). According to Plaintiff, the American Medical Association ("AMA") is actually "not giving all the best medicine to the public" but has instead chosen to promote "fake health care practices." (*Id.* at 4–5). He also engages in an extensive diatribe about how the "industrial medical community" has put forth dietary recommendations that lead only to further health issues because of a lack of potassium. (*Id.* at 4). And in faulting doctors for not recognizing that Vitamin C is an effective treatment for the 2019 novel coronavirus, he states that "medical doctors are ignorant of [this treatment] because they are too stupid to figure it out." (*Id.* at 6). "[Y]ou

can only have bad care," Plaintiff says, in the world of modern medicine. (*Id.* at 7). At times, Plaintiff's allegations devolve into a conspiracy theory that the AMA has engaged in a campaign of "intentional collusion to defraud the government or one based on mutual ignorance and bias" and control society through modern medicine. (*Id.* at 4–5, 7–9).

Accordingly, Plaintiff's problem with Defendants' actions in this case is not that they "failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances." A.R.S. § 12-563. Far from it. At bottom, his problem is with the standard of care itself. That is not what a medical malpractice claim is.[1] Consequently, not only does the Court find that Plaintiff has failed to state a claim for medical malpractice but also finds his allegations frivolous.[2]

Accordingly, the Court will dismiss these allegations with prejudice too.

## II.   CONCLUSION

For these reasons,

IT IS ORDERED that Plaintiff's first amended complaint (Doc. 11) is DISMISSED WITH PREJUDICE. The Clerk of the Court shall enter judgment accordingly.

Dated this 6th day of July, 2020.

James A. Teilborg
Senior United States District Judge

---

[1] Perhaps tellingly, Plaintiff has also failed to comply with the procedural requirements of A.R.S. § 12-2603(A) which requires that he certify whether his medical malpractice claim is one that requires expert testimony. The Arizona Court of Appeals has stated that "a claimant's failure to properly certify the non-frivolous nature of the complaint pursuant to A.R.S. § 12-2603 is a pleading failure." *Boswell v. Fintelmann*, 392 P.3d 496, 498 ¶ 5 (Ariz. Ct. App. 2017). While *Boswell* also cautioned that dismissal should be without prejudice when it is based solely on noncompliance with the statute, the Court finds that Plaintiff's failure to comply with the statute supports an inference that he is not actually bringing a medical malpractice claim, but a frivolous claim challenging the standards that the medical community employs.

[2] Though these allegations are severely underdeveloped, Plaintiff's complaint could also appear to allege some sort of First Amendment right to make money by busking and the right to file a grievance to some unidentified person in the Mayo Clinic. The Court likewise finds that these "claims" are frivolous too.